IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEREK LAURITSEN, MELISSA THOMPSON,
WAYNE VLASNIK, ROY NELSON, and
LAURITSEN FIREWOOD & RENTAL, INC.,

              Plaintiffs,

v.                                            OPINION and ORDER

HIAWATHA NATIONAL BANK, ROGER RAY,        24-cv-331-jdp
DALE HALL, ADAM MORINE, JOHN/JANE DOE,
POLK COUNTY SHERIFF'S DEPARTMENT, and
POLK COUNTY,

              Defendants.

---

This lawsuit arises from the repossession of property that plaintiffs Lauritsen Firewood & Rental, Inc., and Derek Lauritsen had pledged as collateral for loans from defendant Hiawatha National Bank. The repossession was complex, extending over three days, and did not go smoothly. Some of the seized property was damaged. And some of the seized property was actually owned by others and thus hadn't been pledged as collateral. Plaintiffs bring federal and state claims seeking compensation for their losses.

Plaintiffs' federal claims, asserted under 42 U.S.C. § 1983, allege constitutional violations by defendants Polk County, Adam Morine, a Polk County Sheriff's Department deputy, and Dale Hall, a Sheriff's Department captain.[1] Plaintiffs contend that Morine and

---

[1] Plaintiffs also sued John/Jane Doe, who they say are officers with the Sheriff's Department. *See* Dkt. 8, ¶ 10. But plaintiffs failed to file an amended complaint identifying these officers by the deadline for doing so. As a result, the court will dismiss plaintiffs' claims against them. The court will also dismiss the Sheriff's Department as a defendant because it is not a legal entity separable from Polk County. *See Whiting v. Marathon Cnty. Sheriff's Dep't*, 382 F.3d 700, 704 (7th Cir. 2004).

Hall are liable under the Fourth Amendment because the damage to the seized property made the seizure unreasonable. The owners of the stored property contend that they were deprived of their due process rights under Fourteenth Amendment because they didn't get a fair chance to get their property back. Plaintiffs contend that Polk County itself is liable for failing to properly train Morine and the private parties that conducted the repossession.

Plaintiffs' state-law claims are asserted against the non-governmental defendants, Hiawatha Bank and Roger Ray, the Hiawatha Bank employee who oversaw the repossession. Plaintiffs contend that Hiawatha Bank and Ray did not dispose of the collateral in a commercially reasonable way and intentionally and negligently damaged their property or took it from them.

The government defendants move for summary judgment on the constitutional claims. Dkt. 45. The court concludes that plaintiffs do not have any viable constitutional claims against Deputy Morine, Captain Hall, or Polk County. The Lauritsen repossession was the largest repossession ever conducted by the Polk County Sheriff's Department. Deputy Morine coordinated the repossession with Hiawatha Bank, who engaged private contractors to remove the collateral. Plaintiffs have no evidence that any governmental actor intentionally violated any plaintiffs' property rights, or that any governmental actor stood by while others did so. Plaintiffs' redress, if any, must be on their state-law claims against Hiawatha Bank and Ray.

The court will decline to exercise supplemental jurisdiction over the plaintiffs' state-law claims. Hiawatha Bank and Ray's motion for partial summary judgment, Dkt. 51, will be denied as moot.

BACKGROUND

The following facts are undisputed.

Between 2012 and 2016, Lauritsen Firewood entered into nine loan agreements with Hiawatha Bank. Derek Lauritsen personally guaranteed some of those loans. After Lauritsen Firewood defaulted on the loans, Hiawatha Bank sued Lauritsen Firewood and Derek Lauritsen in state court, and it obtained a judgment against them for approximately $2.25 million.

The state court issued a writ of execution for replevin, which ordered the Sheriff's Department to retrieve Lauritsen Firewood and Derek Lauritsen's property as collateral. The scope of the writ was extensive, including virtually anything of value on the Lauritsen property. As most relevant here, the writ specifically ordered the seizure of Lauritsen Firewood and Derek Lauritsen's livestock and their farm machinery, equipment, and tools.

Plaintiffs Melissa Thompson, Wayne Vlasnik, and Roy Nelson (the Storage Plaintiffs) stored farming tools and equipment and cattle on the Lauritsen facility. Before the repossession, the government defendants did not know that the Storage Plaintiffs stored personal property at the Lauritsen facility.

Deputy Morine served as the Sheriff's Department's point person for executing the writ. He met with Roger Ray and Hiawatha Bank's attorney to discuss how to accomplish the repossession. They planned the order of operations, including collecting the cattle and identifying the machinery to be repossessed. Morine delegated most of the logistics to Ray and Hiawatha Bank. Hiawatha Bank retained Hansen & Young, an auction house, to help retrieve items. Ray arranged for Equity Livestock, a livestock trucking company, to transport the cattle.

The repossession itself took place over three days in May 2021. According to Morine, it was the largest repossession in the Sheriff's Department's history. The first day of the

repossession involved retrieving the cattle. It took Ray over six hours to do so. At some point, deputy sheriffs used squad cars to help corral the cattle. Hall also drove his vehicle through a field to help with corralling efforts. The first day also involved locating farm machinery, equipment, and tools. Morine identified and photographed farm machinery. The Sheriff's Department also seized items from a detached garage. Vlasnik told Morine and Hall that he stored personal property at the Lauritsen facility.

On the second day, Hanson & Young seized and transported heavy machinery, as well as farm and logging equipment. Hall walked with Derek Lauritsen through sheds, and Derek Lauritsen identified items belonging to the Storage Plaintiffs. Thompson also told Hall that she stored property at the Lauritsen facility.

On the third day, Hanson & Young seized and transported two large pieces of farm equipment, as well as other smaller farm equipment and tools.

At some point during the three-day repossession, Morine advised his fellow Sheriff's Department employees to mark pieces of farm machinery to be repossessed by spraying road paint on their tires.

The court will discuss additional facts as they become relevant to the analysis.

ANALYSIS

Plaintiffs don't challenge the validity of the writ of execution for replevin, which means they have no complaint about Hiawatha Bank taking possession of the Lauritsen property that had been pledged as collateral. Nor can plaintiffs complain about the Polk County Sheriff's Department supervising the repossession to make sure that there was no interference with Hiawatha Bank exercising its right of replevin. Plaintiffs' complaints are that some of the seized

property was damaged, that some non-Lauritsen property got swept up in the repossession effort, and that Polk County is responsible for those problems because it failed to train the individuals who performed the repossession.

The government defendants move for summary judgment on the constitutional claims against them. Dkt. 45. The government defendants are entitled to summary judgment if the material facts are undisputed and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The court will view the summary judgment evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party.

A. **Plaintiffs' federal claims**

To prevail on their claim under § 1983 based on a Fourth Amendment violation, the plaintiffs must show that (1) a person acting under color of state law (2) made a seizure and (3) the seizure was unreasonable. *See Pepper v. Vill. of Oak Park*, 430 F.3d 805, 808–09 (7th Cir. 2005). Here, there's no genuine dispute that there was a seizure by persons acting under color of state law.[2] Nor is there any real dispute that the seizure would have been reasonable if not for the damage and the seizure of the Storage Plaintiffs' property. So the question is whether the damage and the seizure of the Storage Plaintiffs' property would support a claim under § 1983 against the government defendants.

---

[2] The repossession was accomplished primarily by private parties. But it was authorized by the state court through a writ of execution for replevin and effectuated with the assistance of the Polk County Sheriff's Department. The court will assume for purposes of this opinion that all those who effectuated the repossession were acting under color of state law. Plaintiffs have not asserted constitutional claims against either Hiawatha Bank or Ray on the theory that they were acting under color of state law.

Actions under § 1983 require the personal involvement of the defendants. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). The government defendants contend that there is no evidence that Morine and Hall seized any property. That's not a valid defense: it's undisputed that both Morine and Hall participated in the repossession. If the repossession itself were unlawful, Morine and Hall could be held liable for participating in it. But the repossession itself was not unreasonable.

Morine and Hall may be liable for the conduct of others if they knew that others were violating plaintiffs' constitutional rights but approved it or turned a blind eye to it. *See Gentry*, 65 F.3d at 561. Morine and Hall may also be held personally responsible if plaintiffs show that they were actively in cahoots with private individuals who violated their rights. *See Pepper*, 430 F.3d at 811. To prevail on either of these theories, plaintiffs must provide evidence that Morine and Hall knew that the private individuals were violating plaintiffs' Fourth Amendment rights or that they acted with deliberate, reckless indifference to the actions of private individuals. *See Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). Morine and Hall may not be held liable for a constitutional violation based on mere negligence. *See Wilson v. Warren Cnty.*, 830 F.3d 464, 469 (7th Cir. 2016).

As explained in the next sections, the court concludes that plaintiffs have adduced no evidence that Morine and Hall were personally involved in the damage to the seized property. Nor did the seizure of the Storage Plaintiffs' property violate plaintiffs' due process rights. There is no evidence that Morine or Hall knowingly acquiesced in constitutional violations committed by others.

### 1. Damage to the seized property

As Morine concedes, the repossession "did not go smoothly." Dkt. 95, ¶ 57. During Ray's attempts to corral the cattle, cows ran through fences, gates, and barbed wire, leaving them wounded and bloodied. The corralling efforts caused an estimated $67,500.00 in damage to Derek Lauritsen's fencing. Plaintiffs also allege that some farming equipment was damaged, but they do not identify who damaged it. *See id.*, ¶¶ 74–90. It is undisputed that Hanson & Young seized the farm machinery and equipment, not Morine or Hall.

Morine was the Sheriff's Department's point person for planning the repossession. But there is no evidence that Morine directed anyone to damage plaintiffs' property, or that he otherwise directed that the repossession be conducted in an unreasonable manner. To the contrary, the evidence supports only one conclusion: Morine recognized that the Lauritsen repossession was a large, complex operation that was beyond the capability of the Sheriff's Department. Morine reasonably looked to the creditor, Hiawatha Bank, and Hiawatha Bank's employee Ray, for the operational expertise to take possession of a large amount of farm tools, equipment, and livestock. Nor is there any evidence that Hall was responsible for any intentional damage to property. Again, the record demonstrates the opposite: only after the corralling efforts got out of hand, did Hall use his vehicle to get the livestock back under control. Plaintiffs have scant evidence that anyone intentionally damaged the seized property; the record reflects, at most, negligence in conducting the repossession.

Morine and Hall are not personally responsible for the alleged violations of plaintiffs' Fourth Amendment rights. As a result, they cannot be held liable under § 1983, and plaintiffs' claims against them fail.

### 2. Seizure of the Storage Plaintiffs' property

The Storage Plaintiffs have adduced evidence that they stored livestock, farm machinery, equipment, and tools on the Lauritsen facility.[3] This property was not pledged as collateral to Hiawatha Bank, and thus it was not a proper target of the repossession. Nevertheless, it was seized along with the Lauritsen property.

But that does not mean that Morine and Hall knew that the Storage Plaintiffs' property was beyond the scope of the writ of replevin. All the Storage Plaintiffs' property was the same type of property described in the writ. The Storage Plaintiffs' property was not stored separately from Lauritsen property. None of the tools had markings indicating that they were owned by people other than Lauritsen Firewood or Derek Lauritsen.

During the repossession, some of the Storage Plaintiffs told Morine and Hall that they stored personal property on Derek Lauritsen's real property. Morine and Hall did not have to accept those statements as true. The Storage Plaintiffs did not provide any documentation showing that they owned the property. *See* Dkt. 96, ¶¶ 69–71, 92, 111. The property matched the description of the property categories described in the writ. At most, Morine and Hall were negligent in mishandling some of the Storage Plaintiffs' property, but that's not a basis for constitutional liability.

The Storage Plaintiffs also contend that Morine and Hall violated their Fourteenth Amendment due process rights because they did not provide the Storage Plaintiffs with process

---

[3] Specifically, Vlasnik stored "cattle, tools, a large air compressor, and a portable welder." Dkt. 96, ¶ 73. Thompson stored "various tools on the Lauritsen property, such as sockets, ratchets, AC tools for air conditioning, and pressure gauges." *Id.*, ¶ 94. Finally, Nelson stored "a tractor, a grain trailer, a motor, a welder, ramps for a loader, an air tank, and tools in a shed." *Id.*, ¶ 64.

adequate to protect their property. *See* Dkt. 57, at 24–32. Due process typically requires government officials to provide individuals with notice and an opportunity to be heard before depriving them of property. *See Tucker v. Williams*, 682 F.3d 654, 660 (7th Cir. 2012). But the type and amount of process due depends on the situation. *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

The Storage Plaintiffs contend that their rights to due process entitled them to a hearing *before* they were deprived of their property. Dkt. 57, at 24–25. But they fail to explain how a predeprivation hearing would have been possible given that the government defendants did not know that the Storage Plaintiffs owned items at the Lauritsen facility until after the repossession had started. The court concludes that a predeprivation hearing was not practical. Nor was it necessary, so long as the Storage Plaintiffs received sufficient postdeprivation process.

To succeed on their procedural due process claims, the Storage Plaintiffs must show that there were insufficient procedural protections surrounding the seizure of their property. *See Orozco v. Dart*, 64 F.4th 806, 814 (7th Cir. 2023). "[T]he relevant constitutional question is whether sufficient state-law protections *exist*, not whether sufficient protections were *afforded*." *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008).

Wisconsin law provides a procedure for individuals like the Storage Plaintiffs who are deprived of their personal property because of a replevin action against another individual to get their property back:

> If the property taken [in a replevin action] is claimed by a 3rd person, the 3rd person may make application to the judge or judicial officer under [Wis. Stat. §§ 810.02 and 810.03] for an order directing that the 3rd person be given delivery of the property so claimed. Any person having possession of the property may move the court to vacate or modify the order

9

>directing delivery to the 3rd-party claimant, or post bond in the same manner provided for the defendant.

Wis. Stat. § 810.11.[4]

Wisconsin law also provides several causes of action for individuals deprived of their personal property. For example, they could bring an action to recover their personal property, *see* Wis. Stat. § 893.35; an action for wrongful taking of their personal property, *see id.* § 893.51; an action for any injury to their personal property, *see id.*, § 893.52; or an action for a tort caused by Polk County or its officers, *see id.*, § 893.80. These postdeprivation remedies are adequate, obvious, and available for individuals like the Storage Plaintiffs to pursue. *See Olson v. Sauk Cnty.*, No. 22-cv-562-wmc, 2024 WL 3273357, at *15 (W.D. Wis. July 2, 2024).

The court concludes that state law provides the Storage Plaintiffs with an adequate procedure to get the relief they seek.[5] The Storage Plaintiffs may not seek damages from Morine and Hall "because due process requires only *sufficient* process, not [the Storage Plaintiffs'] preferred additional process from these two employees." *Annan v. Benignetti*, 776 F. App'x 364, 367 (7th Cir. 2019) (citing *Michalowicz*, 528 F.3d at 534). Moreover, the Storage Plaintiffs' failure to take advantage of Wisconsin's remedies does not make Morine and Hall liable for violating their due process rights. *See Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1982). Plaintiffs' Fourteenth Amendment claims against Morine and Hall under § 1983 fail.

---

[4] Neither party cites this statutory provision. Indeed, the government defendants contend that "[t]here is no statutory authority that sets out any specific procedure applicable to this set of circumstances." Dkt. 46, at 11.

[5] The cattle were auctioned the day after they were seized, *see* Dkt. 96, ¶ 57, and the remaining property was auctioned off a few days later, *see id.*, ¶ 38. But the Storage Plaintiffs did not contend that they did not have time to recover their property, so the court does not address that argument.

### 3. *Monell* claim against the Polk County

Plaintiffs contend that Polk County is liable under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). *See* Dkt. 57, at 5–8, 17–23. They contend that Polk County is liable because it failed to train Morine and the private individuals who participated in the repossession. *See id.* The government defendants contend that the court should reject plaintiffs' *Monell* theory of liability because they did not plead a *Monell* claim, leaving the government defendants without proper notice. *See* Dkt. 94, at 2–9.

Polk County cannot be held liable under *Monell* or a failure-to-train theory for failing to train Morine because Morine is not liable for violating plaintiffs' constitutional rights. *See Doxtator v. O'Brien*, 39 F.4th 852, 864 (7th Cir. 2022). Without an underlying constitutional violation, the county cannot itself be liable. *See Tesch v. Cnty. of Green Lake*, 157 F.3d 465, 477 (7th Cir. 1998).

Nor can Polk County be held liable for failing to train the private individuals who participated in the repossession. A municipality's failure to train state actors can constitute an official municipal policy for purposes of *Monell* liability, *see Connick v. Thompson*, 563 U.S. 51, 61 (2011), but only when its failure to do so "reflects deliberate indifference to the constitutional rights of its inhabitants," *City of Canton v. Harris*, 489 U.S. 378, 392 (1989).

To satisfy the deliberate indifference standard, plaintiffs must demonstrate that there was "a 'known or obvious' risk that constitutional violations will occur." *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 379 (7th Cir. 2020) (en banc). Put differently, plaintiffs must show that the municipality was on notice that its inaction would cause constitutional violations. *See id.* Plaintiffs can establish that the municipality was on notice by showing that the "risk of constitutional violations [was] so high and the need for training [was] so obvious that the

11

municipality's failure to act [reflects] deliberate indifference and allow[s] an inference of institutional culpability." *Id.* at 380. The risks of inaction must have been "blatantly obvious." *Bohanon v. City of Indianapolis*, 46 F.4th 669, 677 (7th Cir. 2022).

The Storage Plaintiffs have not adduced evidence that Polk County was aware of a risk of constitutional violations. Nor could a reasonable jury find that the risks of inaction were blatantly obvious. Polk County's reference manual addresses how to seize property. But this repossession was unlike any other in the Sheriff's Department's history, a one-time extraordinary event. Once Morine recognized that the repossession was beyond the Sheriff's Department's capability, he turned to Hiawatha Bank and Ray to retain professionals to take possession of the collateral. The repossession did not go according to plan, but Polk County cannot be held liable for failing to predict a result that was far from inevitable.

### B. Plaintiffs' state-law claims

The court is granting summary judgment on all plaintiffs' federal claims in the government defendants' favor. That leaves plaintiffs' state-law claims against Hiawatha Bank and Ray. There is not diversity of citizenship among the parties, so plaintiffs must rely on supplemental jurisdiction under 28 U.S.C. § 1367 to support the court's jurisdiction over the state-law claims.

Generally, federal courts should relinquish jurisdiction over state law claims if all federal claims are resolved before trial. 28 U.S.C. § 1367(c)(3); *Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015). In unusual cases, the balance of judicial economy, convenience, fairness, and comity will warrant the exercise of jurisdiction. *See Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994).

This is not a case that would justify the court's retention of jurisdiction. Plaintiffs' state-law claims against Hiawatha Bank and Ray are the heart of the case. This court has no special expertise in deciding these questions of state law. Deciding them will require a substantial investment of judicial resources, and the burden would be no greater for a state court as for this court.

The court declines to exercise its supplemental jurisdiction over plaintiffs' state-law claims. Hiawatha Bank and Ray's motion for partial summary judgment will be denied as moot.

ORDER

IT IS ORDERED that:

1. Defendants John/Jane Doe and the Polk County Sheriff's Department are dismissed.

2. Defendants Dale Hall, Adam Morine, and Polk County's motion for summary judgment, Dkt. 45, is GRANTED.

3. The court declines to exercise supplemental jurisdiction over plaintiffs' state-law claims, and those claims are dismissed without prejudice. Defendants Hiawatha National Bank and Roger Ray's motion for partial summary judgment, Dkt. 51, is DENIED as moot.

4. Defendants Dale Hall, Adam Morine, and Polk County's motion to adjourn pretrial disclosures, final pretrial conferences, and trial, Dkt. 104, is DENIED as moot.

5. The clerk of court is directed to enter judgment in favor of defendants Dale Hall, Adam Morine, and Polk County, and close this case.

Entered November 18, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge